UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GETTY PROPERTIES CORP. and NECG HOLDINGS CORP, <br><br> Plaintiffs, <br><br> vs. <br><br> TUXIS-OHR FUEL, INC., RENALDI'S GETTY, LLC, and HSTN LLC, <br><br> Defendants. | Index No. 3:12-cv-00865-AWT <br><br> PLAINTIFFS' REPLY MEMORANDUM TO OPPOSITION OF HSTN and RENALDI'S GETTY <br><br><br> June 18, 2012 |

This memorandum is respectfully submitted on behalf of Plaintiffs in reply to Defendant HSTN, LLC and Renaldi's Getty, LLC's Memorandum in Opposition to Application for Injunction dated January 18, 2012 (cited "HSTN Mem.").

At the outset, it is important to note that Defendants' memorandum concedes that the operators remain in Getty stations, not having signed a license or a lease with Getty or NECG, and that they are selling another supplier's gasoline from Plaintiffs' equipment. They make these concessions with impunity and without any acknowledgment of the serious harm their illegal behavior is causing, including the danger of contamination of the environment, the threat of impure gasoline to the motoring public, and the damage to the trademarks and trade dress caused by this illegal behavior. Defendants' actions are nothing short of a form of piracy.

Defendants' efforts to excuse this outrageous activity are completely without merit. They are based on misstatements of the law, factual assertions in their brief that

are untrue and entirely improper as unsupported "speaking" pleadings, and hysterical hyperbole that defendants will be forced to go out of business if they are obligated to purchase gasoline from the approved supplier, NECG, on a commission basis, despite the fact that other former GVO tenants are now operating in that manner with GVO across Connecticut and operators have been doing business in this manner at hundreds of Getty locations.

I. **Defendants' Right of Occupancy Was Terminated**

Defendants first seek to excuse their behavior by claiming that their tenancies somehow survived the termination of the leases of their direct lessor, Green Valley Oil, with Getty Petroleum Marketing Inc. ("GPMI") and the termination of GPMI's Master Lease with Getty Properties, as explicitly provided by the Bankruptcy Court of the Southern District of New York. This is nonsense.

Defendants refer to various documents in the New York bankruptcy without attaching them and claim that, because a Stipulation and Order terminating the Master Lease provides that it is "without prejudice to any rights that third-party tenants or occupants of the Premises (if any) under applicable law", they are "expressly protected . . . from ouster". That is simply untrue, the statement they quote only reserves their rights, if any, under applicable law.

Contrary to Defendants' assertions, they have no rights to possession under Connecticut law. It has long been the case that termination of an over-lease "terminate[s] all subleases and assignments under it". Hamre v. Michael Etzel & Sons, Inc., 120 Conn. 129, 179 A. 647, 650 (Conn. 1935). The Connecticut authority on

2

which Defendants principally rely, Bargain Mart, Inc. v. Lipkis, 212 Conn. 120, 561 A.2d 1365 (1989), supports the conclusion that Defendants have no right of continued occupancy.

In Bargain Mart, plaintiff operated a store under a sublease with a department store in New Haven. Outlet Department Stores, Inc. acquired the department store's lease "subject to [plaintiff's] sublease." 212 Conn. at 122. Thereafter, Outlet entered bankruptcy and, with the parties consent, the court approved the rejection of the lease, without determining "whether Outlet had defaulted on its lease obligations or whether Welch [the direct lessor from owner] had had a corresponding right to terminate the Outlet Lease." Id. The owner subsequently served a notice to quit on Welch for non-payment of rent, Welch purchased a ten percent interest in the owner, and the summary process case was settled with owner gaining possession. 212 Conn. at 123. Shortly thereafter, defendant Lipkis purchased the overall building with notice of plaintiff's tenancy. Over the years, plaintiff paid its rent to the department store, Outlet and Welch. It also paid rent to the new owner, who accepted it with a reservation. 212 Conn. at 125. The new owner eventually insisted that plaintiff vacate the building saying it was inefficient to heat the whole structure for plaintiff's benefit, but the trial court found that plaintiff retained a valid lease and that the new owner was obligated to provide heat. 125 Conn. at 126.

The Supreme Court held that a voluntary surrender by a principal lessee to a principal lessor does not defeat a sublessee. 212 Conn. at 127. However, the court continued,

3

> [U]nless the rights of the sublessee are protected by the terms of the sublease, '[t]he right of the sublessee to the possession of the premises, as against the original lessor, terminates with the lease or term of the original lessee . . . .'

Id. The Court found that both terminations were voluntary and accordingly that the sublease survived the termination of the intermediate leases.

These principles applied to the facts of this case indicate the Defendants' tenancies ended with the intermediate leases. First, the terminations were in no way voluntary. As indicated in the Supplemental Shea Affidavit, Getty terminated the Master Lease with GPMI because of non-payment of rent. Supplemental Shea Aff. at ¶ 5. GPMI also terminated GVO's lease because of non-payment of rent. Id. There is nothing to indicate that the GPMI bankruptcy proceedings were in any way collusive or that approval of the termination by the bankruptcy court, as attested in exhibits submitted previously, was improper. The GPMI bankruptcy involved hundreds of locations and was occasioned by, among other things, an arbitration award of over $200 million against GPMI in favor of an ethanol producer. Id. at ¶4. Defendants have simply not met their burden to show that these terminations were "voluntary."

Furthermore, Defendants have failed to show that their rights "are protected by the sublease" as required by the court in Bargain Mart. On the contrary, as mentioned in Plaintiffs' moving papers, the GVO form lease with its operators contains an Underlying Lease paragraph, which provides that

> If Company is not the owner of the Station, then this lease shall be subject to all of the terms, provisions and conditions of the lease or other arrangement under which the company holds the Station, and if such lease or other arrangement shall be canceled or terminated, this lease shall be automatically terminated or canceled, without any liability on the part of Company to Lessee.

See Shea Aff. at 5.  Thus, the termination of the GVO/GPMOI lease "automatically" terminated Defendants leases with GVO.  Similarly, the Master Lease between GPMI and Getty provided that "all Subleases . . . , unless Landlord [Getty] elects otherwise, shall automatically terminate upon any termination of the [Master Lease]."

See Supplemental Shea Aff. at ¶ 6.  Accordingly, Defendants' subleases were not "protected" under the leases, they terminated automatically with them.  It is telling that Defendants never address the Underlying Lease clause despite its discussion in Plaintiffs' moving papers.

Finally, Defendants attempt to justify their occupancy with an unelaborated claim that they have a right of first refusal under Conn. Gen Stat § 42-133mm.  However, that position is wrong because: the statute applies only to a "subsequent owner," which GVO certainly was not in that it did not own properties; the Plaintiff's leases automatically terminate upon the termination of the lessor's lease, and all leases were terminated in bankruptcy; and GVO was not selling or assigning the properties, and finally, the Plaintiffs were never in privity with Getty.

In summary, Defendants' only defenses to the admitted facts of their conversion of Plaintiffs' property and equipment are completely without merit.

II.  **Defendants Are Violating Plaintiffs' Trademark and Trade Dress Rights**

Without supporting affidavits, the HSTN memo declares that all operators "removed all indications that the gasoline sold was BP or Getty as appropriate" and that they posted signs on the pumps that they were not pumping Getty or BP gasloline.

HSTN Mem. at 12. Further, there are numerous photographs attached to the brief without authentication or identification as to what location is pictured or when the picture was taken and the duration of the condition portrayed. As such, this material is inadmissible.

Nevertheless, Plaintiffs' photos and Defendants' photos show that the trade dress has been retained at the stations. Although Defendants dismiss the trade dress as "green paint", it is still BP's color, arrangement and proportion. It is not an imitation, it is what these stations have used for years to identify their offering to the public. The fact that a small sign on the pump, visible only when the motorist is next to it, might advise otherwise is no defense to the use of the trade dress without authorization.

Contrary to Defendants' unsupported assertions, it is well-established that actual confusion does not need to be proven to support injunctive relief. Nora Bev., Inc. v. Perrier Group of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998). The pictures themselves provide adequate testimony in this proceeding.

### III.  Defendants Have Failed to Establish Hardship Exceeding Plaintiffs'

In one paragraph, Defendants claim that they face "annihilation" if ordered to buy gasoline from NECG and that Getty "suggests no litany of horribles." HSTN Mem. at 16. Neither statement is remotely correct.

One the one hand, Defendants adduce nothing but speculation to support their claims of harm and completely fail to address the fact that hundreds of businesses are selling gasoline on a commission basis at Getty locations, including their colleagues here in Connecticut.

On the other hand, Defendants do not address, much less dispute, Plaintiffs' concern about the proper operation regulation of their tanks and piping in conformity with applicable environmental regulations, or the danger of adulterated or under-quality gasoline being sold to motorist.  Finally, one need only look at the shabby appearance of the stations with defaced or obscured signs to understand the enormous damage Defendants' purported "debranding" is doing to the goodwill of Getty's stations.  Can such subterfuge fail to discourage customers loyal to the brands they have been using for years?

Lastly, Defendants attempt to convince the court to refrain from granting relief because of the pendency of eviction proceedings.  This is without merit because Plaintiffs are not seeking possession in this action, but only the prevention of the unauthorized delivery and sale of unbranded gasoline from their locations.  If Defendants are concerned about inefficiency, they may be able to remove the summary proceedings to federal court, if they don't wait too long.

## CONCLUSION

Defendants argue for an absurd result. They claim that not only should their willful conversion of Plaintiffs' property and equipment, their violations of trademark and trade dress, their subjection of the public to significant danger be excused, they should actually be deemed in privity with Getty Properties, a company that has had no contact with them at all, among its hundreds of properties. On the contrary, their illegal behavior should be enjoined immediately.

Dated: June 18, 2012
       Stamford, Connecticut

                          Respectfully submitted,

                          ANDERSON KILL & OLICK, P.C.

                          By: /s/ Charles T. Lee
                               Charles T. Lee (CT00297)
                               Amanda Winalski (CT27727)
                               ANDERSON KILL & OLICK, P.C.
                               1055 Washington Boulevard, Suite 510
                               Stamford, CT  06901
                               Telephone:  203-388-7950
                               Facsimile:  203-388-0750
                               *Attorneys for:* Getty Properties Corp.
                                              NECG Holdings Corp

## CERTIFICATION

This is to certify that on June 18, 2012, a copy of the foregoing was filed electronically and served by mail to anyone unable to accept electronic filing. Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

John J. Morgan, Esq.
Barr & Morgan
22 Fifth St.
Stamford, CT 06905

Vincent T. McManus, Jr., Esq.
116 South Main Street, Suite 2
Wallingford, CT 06492

                                               s/ Amanda Winalski
                                               Amanda Winalski