**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

GETTY PROPERTIES CORP, ET AL.,

                                       CIVIL ACTION NO.

                                       3:12-CV-00865-AWT

    PLAINTIFFS

           V.

TUNIXS-OHR, INC., ET AL

DEFENDANTS                                  AUGUST 10, 2012

## DEFENDANT HSTN, LLC AND RENALDI'S GETTY, LLC'S MOTION TO STRIKE AND OBJECTION TO CONTINUING EX PARTE  COMMUNICATIONS  AND MOTION FOR ORDER BARRING FURTHER EX PARTE COMMUNICATION

On June 12, 2012, the plaintiff made application to this Court for a Temporary Injunction pursuant to FRCP 65.  That application was denied not once but twice by the court by way of orders dated June 19, 2012 and July 2, 2012.

On July 3, 2012, the plaintiff's counsel communicated with Chambers ex parte as a result of which the Court apparently issued certain requests sua sponte.  On July 4, 2012, the undersigned moved for an order barring further ex parte communications.

1

On July 27, 2012, Plaintiff again submitted a grossly misleading ex parte letter to the Court.

The defense now moves that the letter be stricken and that it not be used or considered for any purpose whatsoever.  The defense further moves that an explicit order be made that no party or counsel should make any further attempts at ex parte communication with the court except as explicitly allowed by the rules of procedure.

## THE EX PARTE LETTER IS IMPROPER

There are rules regarding how the parties should be communicating with a federal court.  These are explicitly set forth in FRCP rules 5, 7, 10 and 11 as well as the corollary local rules.  The plaintiffs are not following those rules, instead they are making arguments on the telephone, via e-mail and now by letter.  Sometimes letters are described as "letter briefs" in an effort to diminish their obvious improprieties. Throughout the entire time that the undersigned is practice before this court, these ex parte letters have been commonly rejected outright and at least heavily frowned upon. Although one recognizes that in some other jurisdictions, these letters are common, plaintiff's counsel is not from another district.

2

As a preliminary note, these letters have always been considered "ex parte" even where they contain a notation "CC" because such letters suffer the same evils as totally one sided arguments.  In a NY City Bar Association Formal Ethics Opinion, (1987-6) the committee considered letters as "ex parte" because  "the danger that a first impression conveyed in an ex parte submission, however unfair or erroneous, may be decisive. . . ."

Closer to home, United States Magistrate Judge, Thomas P. Smith of this district penned a substantial law review article some years ago on this precise issue.  **Getting the last word: the impropriety of "letter briefs" in state and federal courts**. 68 CONN. B. J. 294 (1994) (Thomas P. Smith and John Rose Jr.).  In that article, magistrate Judge Smith outlined why these ex parte communications are wholly improper.  He noted that these letters "frequently contain assertions that most attorneys would never express a formal memorandum." Id., at 295.  He noted that the federal rules plainly contemplate that documents intended to influence the court should be filed with the clerk and contained in the official record of the case. Id at 296-97.  He then noted that these letters comply with neither the letter nor the spirit of the federal rules. They do not comply with Rule 5.  They are not formal motions or briefs.  Accordingly,

3

there is no mechanism for the opposing counsel to adequately address the letters – especially where, as here, the letter is misleading or downright wrong.

A review of the PACER file for this case demonstrates that the letter was not filed through ECF. Therefore, it is not part of the formal record of the case. It is unclear whether, or how, it will be granted judicial or appellate review. Nevertheless, it was clearly filed in order to affect the outcome of the case or advance the plaintiff's position.

As something other than a pleading, it is unclear whether this letter (or any other letter for that matter) would subject the author to sanctions under rule 11. So, the author of a letter is free to make whatever assertions he or she wishes no matter how misleading, incorrect or downright wrong.

We have rules. They are created for a reason. As Magistrate Judge Smith noted: "when parties fashion their own procedure, they unwittingly remove their cases from the orderly flow of the litigated stream..." That is precisely what is going on in this case. It needs to stop.

4

## THERE IS NO REASON ANY EX PARTE LETTER WAS REQUIRED.

In 1987 when the New York ethics opinion was written and in 1994 when Magistrate Judge Smith's article was written, there was at least some modicum of justification for these letters. At the time, documents filed with the clerk had to be stamped, collated, copied, and distributed to the various judges. That process could take days. Now, none of those processes exist. With the advent of ECF, a document filed is immediately available to the court, chambers, the clerk, and all parties. So, if it was so exceedingly urgent to get a matter before the court, a pleading would likely now be the fastest way to do it. In other words, even the limited justification for letters to the court in '87 and '94 no longer exists.

Further, in this particular case the court has already stated that further briefing will be required of all parties. So, there will be ample opportunity to make whatever arguments counsel sees fit with respect to the bankruptcy court proceeding. Clearly, no one will be prejudiced by making an argument in a formal brief rather than an ad hoc letter.

More importantly, proper briefing will be much better able to present the matter to the court. The court will likely have the full transcript of the hearing at its fingertips.

5

The apparent purpose of the letters is apparently to characterize (or mischaracterize) and make arguments with respect to events which transpired before Judge Chapman. Manifestly, the best way for the court to find out what happened before Judge Chapman would be to review the official transcript. The court see both the substance and tenor of the hearing on its own without the parties spin. The transcript is now available and is attached hereto.

Obviously,  if counsel legitimately felt that the court urgently needed to know the outcome of the bankruptcy proceeding, that outcome could easily have been communicated through a formal pleading.   The court has vigorously demonstrated that it is engaged in this dispute and is ready, willing and able to promptly address matters before it.  It is therefore likely that a formal the pleading would have been reviewed as readily as a letter.  There is absolutely no reason for adopting this ad hoc e-mail procedure.

## THE LETTER IS MISLEADING

Leaving aside the procedural improprieties, the letter is misleading.  In the event, Getty's attempt to circumvent the jurisdiction of this court and substitute the judgment of the bankruptcy court was summarily rejected by Judge Chapman.  In addition, Judge

6

Chapman fairly sternly admonished Getty's counsel regarding several aspects of the motion as well as the other practices adopted by Getty against its dealers.  In short , Judge Chapman ended Getty's blatant attempt at forum shopping.  One suspects the sole purpose of this letter was to "spin" the dispute prior to the transcript becoming available.

Although the transcript captures only imperfectly Judge Chapman's tone, it is obvious that she saw right through the plaintiff's facade.  She clearly and unambiguously indicated her displeasure several times:

At page 18-19 of the transcript: `"I'm really not happy with very many of you at all at this moment in terms of how this was presented and how we got here."`

At page 24:

> `"Then I had a request to shorten notice on this motion to clarify, which had I fully understood what was being raised here I would never have granted the shortened notice. Never.`

So to the extent that it's necessary at the end of the day today that the parties need more time they will be given more time. So that's kind of an admonition going forward.

So that's where we are here today on this motion to clarify with Judge Thompson in Connecticut already having said some things that I view as going to the merits of some of the issues that are raised here. I think Judge Thompson had an amazing grasp of some of the esoteric nuances of what's implicated in a rejection of a bankruptcy lease, particularly in this kind of a multi-layered situation.

But here we are today, and subject to your rights to be heard, my order says what it says, and as I've already pointed out it doesn't say involuntary or voluntary. My order says what it says.

8

And there is also the issue of the fact that this conversation has been started with the District Court judge in Connecticut, and I am troubled by stepping into it at this point, although I would certainly be amenable to putting my -- offering my services to Judge Thompson should he wish to hear more about what my views might be about the effect of the rejection or anything about my order."

Further the plaintiff's current explanation concerning why they were in front of Judge Thompson differs greatly what they said to Judge Thompson in Court.  There plaintiffs said, they wanted to avoid litigation in Connecticut and " take care of this in one fell swoop."  Transcript at 31.

Later, Mr. Lee blamed Judge Thompson's vacation schedule:

MR. LEE: The -- the judge is on vacation till I think the 9th of August, so he went away for a couple weeks, and you know, that's fine, everybody gets a

9

```
right to have a vacation, but we are in, you know, a

situation where we had -

     THE COURT: There's no vacation exception to the

prior pending action rule.
```

The defense respectfully submits that the plaintiff was unabashedly forum shopping. They can claim what they want regarding their motive for forum shopping, but we submit that the suggestion that this foray into NY was some kind of benign educational endeavor is utter nonsense.

## THE TIMING OF THE BANKRUPTCY SUMISSION SUGGESTS THAT THE PLAINTIFFS WERE MERELY ATTEMPTING TO AMBUSH THE DEALERS

The defense further submits that the court should examine the timing of the bankruptcy court submission. Getty's counsel had actual knowledge of the undersigned counsel's trial schedule. It had bees set forth verbatim in a number of e-mails. We submit it is not a coincidence that a pleading was filed in the bankruptcy court precisely on the day that the dealers counsel was most heavily engaged in litigation here in Connecticut. It is not a coincidence that the motion was submitted as an emergency matter which needed an expedited time schedule. Had defense counsel been less

10

vigilant, the motion would have proceeded "under the radar" before the dealers would have had the opportunity to appear and oppose the motion.  Again, it is highly unlikely that all of these things were mere coincidence. One suspects that Judge Chapman felt the same way. See, <u>Transcript,</u> at  24.

## THE COURT SHOULD NOT TOLERATE THE PLAINTIFFS' IMPROPER, AD HOC EX PARTE COMMUNICATIONS.

The defense respectfully submits that the court should not tolerate the kind of ad hoc ex parte procedure being adopted by the plaintiffs in this matter.  The letter submitted by the plaintiff should be formally stricken.  Its contents should not used or considered for any purpose.  The bankruptcy court record is readily available and can be used for whatever purpose.  The court should further order that all parties comply with the motion procedures set forth in the federal rules of civil procedure and local district rules.

## CONCLUSION

It is clear that the matter before the court will be heavily contested.  Given the heated nature of the dispute, one suspects that no matter the outcome in the District Court, or the Superior Court, or the Bankruptcy Court an appeal is likely.  It is critical

that the record be clear.  It is critical that the parties follow the rules of procedure.  It is critical that adversary documents, whether they be pleadings, motions or briefs be in proper form, be served properly, and be properly framed for the court.

The stakes here are extremely high.  For the dealers, the stakes may literally be life-and-death.  We need to do this right - whatever the outcome.  None of us can afford mistakes, especially ones which are very easily avoided.  In this particular instance the bankruptcy court transcripts are available.  There is certainly no need for to preempt the transcript.

Accordingly, the defense respectfully submits that the letter submitted to the court July 27 should be stricken and the court should further order that no further ex parte communication will take place in this case except as explicitly allowed by the rules.

The parties should comply with the federal rules of procedure including, in particular, local rule 5(g) which prohibits communication with the court through fax or other electronic means.

12

Except on matters relating to non-substantive scheduling matters, The parties shall communicate with the court exclusively through ECF

THE DEFENDANTS, HSTN, LLC and
RENALDI'S GETTY, LLC

By_____
        John J. Morgan
        BARR & MORGAN
        22 Fifth Street
        Stamford, CT  06905
        (203)  356-1595
        Juris No. CT13312

13

CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2012 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to any one unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

By:_____
      John J. Morgan (ct13312)
      Barr & Morgan
      22 Fifth Street
      Stamford, CT 06905
      Ph. (203) 356-1595
      Fx: (203) 357-8397
      Jmorgan@pmpalawyer.com

14