# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GETTY PROPERTIES CORP. and
NECG HOLDINGS CORP,

       Plaintiffs,

  vs.

RENALDI'S GETTY, LLC, HSTN LLC, et al.

       Defendants.

Civil Action No. 3:12-CV-00865-AWT

November 28, 2012

**AMENDED COMPLAINT**

Plaintiffs Getty Properties Corp. ("Getty") and NECG Holdings Corp ("NECG") (collectively, "Plaintiffs") as and for their Amended Complaint, allege as follows:

  1.  The purpose of this action is to enjoin the purchase from unauthorized suppliers and re-sale of gasoline to the motoring public by 27 operator defendants (the "Operator Defendants") at Plaintiffs' service stations.  This lawsuit is for conversion of Plaintiffs' property and equipment; for infringement of trademark, service marks and trade dress, including use of a counterfeit mark; for false designation of origin, false description, and false representation, all in violation of the Lanham Act of 1946, 15 U.S.C. §§ 1051, et seq, 1114(1), 1116-8, and 1125(a); for violation of the Connecticut Unfair Trade Practices Act, C.G.S. §§ 42-110a et seq.; and for violation of the Connecticut Unfair Sales Practices Act, C.G.S. §§ 42-114a et seq.

**JURISDICTION AND VENUE**

  2.  Jurisdiction is based on 28 U.S.C. § 1331 (federal question); 28 U.S.C. §§ 1332(a) (diversity of citizenship, see "The Parties" below); 28 U.S.C. § 1338(a) and 15 U.S.C. § 1221 (trademark actions); and 28 U.S.C. § 1338(b) and 15

U.S.C. §§ 1125(a) and 1126 (unfair competition actions).  The matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs.

3.      Venue is conferred by 28 U.S.C. § 1391(a) and (b) because the defendants reside, and the claims arose, in the District of Connecticut.

### THE PARTIES[1]

4.      Plaintiff Getty Properties Corp. is a corporation duly organized and existing under the laws of the State of Delaware, authorized to do business in the State of Connecticut, with its principal place of business at 125 Jericho Turnpike, Jericho, New York.

5.      Plaintiff NECG Holdings Corp. is a corporation duly organized and existing under the laws of the State of New York, authorized to do business in the State of Connecticut, with its principal place of business at 536 Main Street, New Paltz, New York.

6.      Upon information and belief, defendant Renaldi's Getty, LLC formerly doing business as Lauren Renaldi is a Connecticut corporation with its principal place of business at 612 Route 82, Montville, Connecticut.  Renaldi's operates a gasoline service station at 612 Route 82, Montville, Connecticut.

7.      Upon information and belief, defendant HSTN LLC is a Connecticut corporation with its principal place of business at 126 South Road, Enfield, Connecticut. HSTN operates a gasoline service station at 126 South Road, Enfield, Connecticut.

8.      Upon information and belief, defendant MEHAR PETRO, INC.  is a Connecticut corporation with its principal place of business at 241 White Street,

---

[1] Plaintiffs reserve their right to further amend their complaint as necessary upon the discovery of the identities of the unauthorized suppliers selling and/or delivering gasoline to the Operator Defendants either at present or in the future.

2

Danbury, Connecticut.  MEHAR operates a gasoline service station at 241 White Street, Danbury, Connecticut.

9.      Upon information and belief, defendant NOROTON SERVICE STATION, INC. is a Connecticut corporation with its principal place of business at 1095 Long Ridge Road, Stamford, Connecticut.  NOROTON SERVICE STATION operates a gasoline service station at 179 Noroton Avenue, Darien, Connecticut.

10.     Upon information and belief, defendant SSAW LLC is a Connecticut corporation with its principal place of business at 886 Hartford Road, Manchester, Connecticut.  SSAW operates a gasoline service station at 886 Hartford Road, Manchester, Connecticut.

11.     Upon information and belief, defendant ONE STOP MART, LLC is a Connecticut corporation with its principal place of business at 12 Mona Avenue, Branford, Connecticut.  ONE STOP MART operates a gasoline service station at 231 Cherry Street, Milford, Connecticut.

12.     Upon information and belief, defendant INDTUR, LLC is a Connecticut corporation with its principal place of business at 531 North Main Street, Naugatuck, Connecticut.  INDTUR operates a gasoline service station at 531 North Main Street, Naugatuck, Connecticut.

13.     Upon information and belief, defendant NAVJOT ENTERPRISES, INC. is a Connecticut corporation with its principal place of business at 241 Kimberly Avenue, New Haven, Connecticut.  NAVJOT ENTERPRISES operates a gasoline service station at 241 Kimberly Avenue, New Haven, Connecticut.

3

14.     Upon information and belief, defendant EXPERT AUTOMOTIVE
REPAIRS, LLC is a Connecticut corporation with its principal place of business at 206
Main Street, Norwalk, Connecticut.  EXPERT AUTOMOTIVE REPAIRS operates a
gasoline service station at 206 Main Street, Norwalk, Connecticut.

15.     Upon information and belief, defendant 331 WEST AVENUE GAS
STATION, LLC is a Connecticut corporation with its principal place of business at 331
West Avenue, Norwalk, Connecticut.  331 WEST AVENUE GAS operates a gasoline
service station at 331 West Avenue, Norwalk, Connecticut.

16.     Upon information and belief, defendant ALP CONVENIENCE, LLC
is a Connecticut corporation with its principal place of business at 301 East Main Street,
Plainville, Connecticut.  ALP CONVENIENCE operates a gasoline service station at 301
East Main Street, Plainville, Connecticut.

17.     Upon information and belief, defendant PAMBY MOTORS, INC. is
a Connecticut corporation with its principal place of business at 665 Danbury Road,
Ridgefield, Connecticut.  PAMBY operates a gasoline service station at 36 Danbury
Road, Ridgefield, Connecticut.

18.     Upon information and belief, defendant STATE LINE GETTY, INC.
is a Connecticut corporation with its principal place of business at 242 S. Salem Road,
Ridgefield, Connecticut.  STATE LINE GETTY operates a gasoline service station at
242 S. Salem Road, Ridgefield, Connecticut.

19.     Upon Information and belief, defendant ASTANH, LLC is a
Connecticut corporation with its principal place of business at 850 Hopmeadow Street,

4

Simsbury, Connecticut.  ASTAHN operates a gasoline service station at 850 Hopmeadow Street, Simsbury, Connecticut.

20.     Upon information and belief, defendant ZS ENTERPRISES, LLC is a Connecticut corporation with its principal place of business at 3 West Stafford Road, Stafford Springs, Connecticut.  ZS ENTERPRISES operates a gasoline service station at 3 West Stafford Road, Stafford Springs, Connecticut.

21.     Upon information and belief, defendant BODAEVE, INC. is a Connecticut corporation with its principal place of business at 16 Long Ridge Road, Stamford, Connecticut.  BODAEVE operates a gasoline service station at 16 Long Ridge Road, Stamford, Connecticut.

22.     Upon information and belief, defendant WEST BROAD SERVICE CENTER, LLC is a Connecticut corporation with its principal place of business at 59 W. Broad Street, Stamford, Connecticut.  WEST BROAD operates a gasoline service station at 59 W. Broad Street, Stamford, Connecticut.

23.     Upon information and belief, defendant MICA ENTERPRISES, INC. is a Connecticut corporation with its principal place of business at 4 Osborne Hill Road Extension, Sandy Hook, Connecticut.  MICA ENTERPRISES operates a gasoline service station at 224 Magee Avenue, Stamford, Connecticut.

24.     Upon information and belief, defendant TOLLAND GETTY, INC. is a Connecticut corporation with its principal place of business at 216 Merrow Road, Tolland, Connecticut.  TOLLAND GETTY operates a gasoline service station at 216 Merrow Road, Tolland, Connecticut.

5

25.     Upon information and belief, defendant J&J CAR CARE CENTER, INC. is a Connecticut corporation with its principal place of business at 271 Post Road East, Westport, Connecticut.  J&J CAR CARE CENTER operates a gasoline service station at 271 Post Road East, Westport, Connecticut.

26.     Upon information and belief, defendant WILTON SERVICE CENTER, INC. is a Connecticut corporation with its principal place of business at 210 Danbury Road, Wilton, Connecticut.  WILTON SERVICE CENTER operates a gasoline service station at 210 Danbury Road, Wilton, Connecticut.

27.     Upon information and belief, defendant ATKR, LLC is a Connecticut corporation with its principal place of business at 561 Sullivan Avenue, South Windsor, Connecticut.  ATKR operates a gasoline service station at 561 Sullivan Avenue, South Windsor, Connecticut.

28.     Upon information and belief, defendant JZ MART, LLC is a Connecticut corporation with its principal place of business at 300 Bridgeport Avenue, Milford, Connecticut.  JZ MART operates a gasoline service station at 300 Bridgeport Avenue, Milford, Connecticut.

29.     Upon information and belief, defendant MUJTABA KHALIED is a natural person who, upon information and belief, resides in the State of Connecticut and operates a gasoline service station d/b/a SANA GAS at 176 Tolland Turnpike, Manchester, Connecticut.

30.     Upon information and belief, defendant JANRISK CAPITAL, LLC is a Connecticut corporation with its principal place of business at 81 Thompson Street,

6

Milford, Connecticut.  JANRISK operates a gasoline service station at 721 Kings Highway, Fairfield, Connecticut.

31.     Upon information and belief, defendant UNHK, LLC is a Connecticut corporation with its principal place of business at 208 Foxon Road, North Branford, Connecticut.  UNHK operates a gasoline service station at 208 Foxon Road, North Branford, Connecticut.

32.     Upon information and belief, defendant SAUD ALKULAIB is a natural person who, upon information and belief, resides in the State of Connecticut and operates a gasoline service station at 47 Wolcott Road, Wolcott, Connecticut.

33.     Upon information and belief, defendant HAWARS PARK AVE. LLC is a Connecticut corporation with its principal place of business at 1235 Park Avenue, Bridgeport, Connecticut.  HAWARS PARK AVE. operates a gasoline service station at 1235 Park Avenue, Bridgeport, Connecticut.

34.     Upon information and belief, defendant RHS, LLC is a Connecticut corporation with its principal place of business at 1267 Fairfield Avenue, Bridgeport, Connecticut.  RHS operates a gasoline service station at 1267 Fairfield Avenue, Bridgeport, Connecticut.

35.     Upon information and belief, ADNAN RAHIM and SALEH RANA are natural persons who, upon information and belief, reside in the State of Connecticut and operate a gasoline service station at 1789 Barnum Avenue, Bridgeport, Connecticut.

36.     Upon information and belief, defendant H & A CONVENIENCE, LLC is a Connecticut corporation with its principal place of business at 2098 Fairfield

7

Avenue, Bridgeport, Connecticut.  H & A CONVENIENCE operates a gasoline service station at 2098 Fairfield Avenue, Bridgeport, Connecticut.

37.     Upon information and belief, defendant MADISON AVE. MART, LLC is a Connecticut corporation with its principal place of business at 3725 Madison Avenue, Bridgeport, Connecticut.  MADISON AVE. MART operates a gasoline service station at 3725 Madison Avenue, Bridgeport, Connecticut.

38.     Upon information and belief, defendant SUPERIOR SERVICE, INC. is a Connecticut corporation with its principal place of business at 813 Federal Road, Brookfield, Connecticut.  Superior Service operates a gasoline service station at 813 Federal Road, Brookfield, Connecticut.

## **FACTUAL BACKGROUND**

39.     On April 19, 2012, NECG entered into a Unitary Lease with Getty, which currently includes 22 Connecticut stations that are being illegally occupied by the Operator Defendants.  Getty also transferred ownership of the underground storage tanks, piping, and dispensers at the stations to NECG.  Getty has not yet sublet an additional five Connecticut stations that also are being illegally occupied by the Operator Defendants.

40.     Previously, Getty leased the Connecticut stations, including the Operator Defendants', and stations in ten other states to Getty Petroleum Marketing Inc. ("GPMI") pursuant to a Consolidated and Restated Master Lease (the "Master Lease"). Under the Master Lease, Getty leased approximately 800 service station properties to GPMI.  GPMI sublet substantially all of those properties to other parties, many of which in turn sub-sublet the premises to service station operators.

8

41.     On April 2, 2009, GPMI subleased over 300 stations in New England, including Connecticut, to a distributor called Green Valley Oil, LLC ("GVO"). GVO in turn sub-subleased the Connecticut stations to station operators, including the Operator Defendants.  Most of the Connecticut operators, including the Operator Defendants, sold BP branded gasoline under the BP trademark and trade dress, and a few sold Getty branded gasoline under the Getty trademark and trade dress, both as supplied by GVO.

42.     As a result, the Operator Defendants occupied the premises pursuant to a sub-sublease with GVO, which in turn subleased the premises from GPMI (pursuant to the "GPMI-GVO Sublease"), which leased from Getty pursuant to the Master Lease.

43.     On November 29, 2011, Getty sent GPMI a notice of termination of the Master Lease effective December 12, 2011 based on, among other things, GPMI's failure to pay rent pursuant to the terms of the Master Lease and subsequent failure to cure the nonpayment.

44.     GPMI filed for bankruptcy on December 5, 2011, which temporarily stayed the effect of Getty's termination of the Master Lease, but not the occurrence of the termination itself.

45.     On December 22, 2011, GPMI served GVO with a notice of default for GVO's failure to pay December rent advising GVO that, if the default was uncured as of January 6, 2012, GPMI would exercise its rights pursuant to the GPMI-GVO Sublease to terminate the sublease.  On January 7, 2012, after GVO failed to pay the December 2011 and January 2012 rent owed under the GPMI-GVO Sublease to GPMI,

Getty, or into escrow, GPMI issued a notice of termination terminating the GPMI-GVO Sublease as of January 9, 2012.

46.     On April 30, 2012, the U.S. Bankruptcy Court for the Southern District of New York issued an order pursuant to which the Master Lease was rejected and confirmed as terminated by law, effective April 30, 2012 (the "Rejection Order"). The Rejection Order relating to the Master Lease directed GPMI to "relinquish possession of and deliver the Premises to Getty or as Getty directs, free and clear of all liens and encumbrances." The court confirmed that upon termination of the Master Lease, possession of the properties at issue reverted to Getty. The GPMI-GVO Sublease also was rejected and its termination confirmed by order of the bankruptcy court.

47.     On April 18, 2012, GVO terminated each of the Operator Defendants whose sub-subleases with GVO were subject to the terms of the overleases, including the Master Lease. The GVO Termination Letter notified the Operator Defendants that their Retail Gasoline Station Lease Agreements, Lease Supply Contracts, and other related agreements between the operators and GVO were terminated effective April 30, 2012. The termination was mandated by the terms of both of the overleases, as well as the terms of the Operator Defendants' sub-subleases.

48.     Specifically, the GVO Termination Letter states that GVO "is unable to secure continued possessory rights in and to the Station after April 30, 2012 and, after April 30, 2012, [GVO] will no longer have the right to grant possession of the Station to you. The termination of [GVO's] underlying lease are grounds for termination under your Franchise." The letter continues:

10

> More specifically, Section 33(d) of your Lease Supply Contract provides, in pertinent part, that the loss by [GVO] of its right to grant possession of the Station is an occurrence of an event which is relevant to the relationship of [GVO] to you under the Lease Supply Contract and, as a result of which, termination of the Lease Supply Contract is reasonable.  Section 23 of the Retail Gasoline Station Lease Agreement provides that any termination of the Lessee Supply Contract or of any other agreement between the parties shall terminate the Retail Gasoline Station Lease Agreement.

49.     The GVO Termination Letter memorialized the direct termination of the Operator Defendants' sub-subleases by GVO and confirmed that GVO no longer maintained the right or authority to grant possession of the service stations to the operators.  Termination of the sub-subleases by GVO included termination of both the Operator Defendants' leases and their supply contracts.

50.     The Operator Defendants' sub-subleases with GVO each contained a clause providing:

> If [GVO] is not the owner of the Station, then this lease shall be subject to all of the terms, provisions and conditions of the lease or other arrangement under which [GVO] holds the Station, and if such lease or other arrangement shall be canceled or terminated, this lease shall be automatically terminated or canceled, without any liability on the part of [GVO] to Lessee.

51.     As a result of the termination of the Master Lease and the GPMI-GVO Sublease, as well as the GVO Termination Letter, the sub-subleases of all the Operator Defendants terminated at the latest as of April 30, 2012.

52.     Notwithstanding the termination of their interests in the premises, on or about April 23, 2012, Getty sent to the Operator Defendants Revocable License Agreements, which, in exchange for a monthly license fee, offered them a temporary and revocable license to continue to use the premises on a month-to-month basis to sell motor fuels to the public and/or for any other use that was permitted by the terms of its

11

prior lease, until the operators could enter into a longer-term arrangement with Getty's designated lessor and supplier.  The license also provided that the exclusive supplier of motor fuels to the premises would be NECG, an authorized BP and Getty supplier.  The license explicitly states, "You will not sell at the Site motor fuels obtained from any source other than NECG."

53.     The Operator Defendants rejected the offers of the license; other operators accepted them.  To date, the Operator Defendants have not entered into any license or other agreement with Getty or NECG permitting them to occupy the Getty service stations or to use the equipment at the stations to store or sell gasoline acquired from any supplier except NECG, with one exception – defendant ALP Convenience accepted and then reneged on the license offer.  Plaintiffs' understanding and belief is that all of the service stations unlawfully occupied by the Operator Defendants that remain operational are buying gasoline from unauthorized suppliers and selling it to the motoring public.

54.     Getty and NECG have initiated actions in Connecticut state court to evict the Operator Defendants, and separately in this Court to enjoin them from selling unbranded gasoline on the premises and thus infringing on Getty's trademarks and committing conversion via use of Getty's and NECG's premises and underground storage tanks.

55.     The Operator Defendants have attempted to use a series of unauthorized gasoline suppliers to continue their unlawful use of and profit from the service station premises owned by Getty and the personalty thereon owned by NECG and Getty.  An initial unauthorized supplier ceased supplying the Operator Defendants

12

upon receipt of a cease and desist letter from Plaintiffs' counsel.  A subsequent unauthorized supplier, Tuxis-Ohr Fuel, Inc. ("Tuxis"), was a party to this action before this Court before ultimately settling with Plaintiffs and agreeing to cease supplying the Operator Defendants with gasoline.

56.     On October 17, 2012, Plaintiffs entered into a Stipulation of Settlement and Order of Dismissal with Tuxis, which was so ordered by this Court on October 18, 2012.  (Doc. #68).  In the Stipulation, Tuxis acknowledged that it had been supplying gasoline to the Operator Defendants' service stations since May 1, 2012 and agreed to provide Plaintiffs with records of its deliveries.

57.     The Stipulation further stated that once Tuxis ceased delivering to the 34 service stations included in the Stipulation (including all Operator Defendants with the exception of ALP Convenience), "NECG will offer to supply the Stations on a delivered tank wagon basis consistent with the commercial terms of the Stations' most recent supply contract with Green Valley Oil, LLC, and will do so upon acceptance by the operators at such locations of such offer …."  Plaintiffs mailed temporary supply agreements to 26 of the 27 Operator Defendants in accordance with the Stipulation on or about October 20, 2012 (ALP was not offered this supply arrangement as it previously had agreed to the NECG license offer, but then reneged on that offer).  The temporary supply arrangement specifically states: "This arrangement is temporary and shall be in effect during the pendency of the legal proceedings relating to this location, subject to any earlier termination based on the terms of the agreements between NECG and you."

58.    To date, six station operators who previously had been purchasing gasoline from unauthorized suppliers have accepted the temporary NECG supply offer. Those six operators include defendants HAWARS PARK AVE., LLC; RHS, LLC; ADNAN RAHIM and SALEH RANA; H & A CONVENIENCE, LLC; MADISON AVE. MART, LLC; and SUPERIOR SERVICE, INC.

59.    Upon information and belief, the remaining Operator Defendants continue to purchase gasoline from unauthorized suppliers and re-sell it to the motoring public from Getty or NECG-owned pumps and storage tanks.

## FIRST CLAIM FOR RELIEF

## CONVERSION

60.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 4 through 59 hereof as if fully set forth herein.

61.    Upon information and belief, the Operator Defendants are purchasing unbranded gasoline from unauthorized suppliers and depositing it into the underground storage tanks owned by Getty or NECG without authorization from Getty or NECG and in violation of specific prohibitions from Getty and NECG.

62.    Upon information and belief, the Operator Defendants have sold said unbranded motor fuel to the public utilizing the piping and dispensing pumps owned by NECG without authorization from Getty or NECG.

63.    By reason of the foregoing, the Operator Defendants have exercised wrongful dominion over Plaintiffs' property.  These acts constitute conversion and have caused damage to Plaintiffs.

64.    The wrongful use of unauthorized suppliers has deprived Plaintiffs of any assurance of compliance with environmental regulations relating to the

14

prevention and detection of petroleum releases from the underground storage tanks or other spills from the stations.  Further, it has deprived Plaintiffs of the ability to assure that unadulterated motor fuel of the posted octane level is sold to the motoring public from their stations.  As a result, Plaintiffs will suffer irreparable harm to their business reputation which is not compensable with money damages if the Operator Defendants' acts of conversion of Plaintiffs' property and equipment is not permanently enjoined.

## SECOND CLAIM FOR RELIEF

## TRADEMARK INFRINGEMENT

65.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 4 through 64 hereof as if fully set forth herein.

66.    Getty is the owner and authorized licensor of the Getty trademark.

67.    Upon information and belief, BP is the owner and registrant of several BP marks, which were registered on the Principal Register of the United States Patent and Trademark Office, including the mark bearing Registration Number 3,405,599.  The BP marks were duly and lawfully issued and are currently in full force and effect.

68.    NECG has been authorized by BP and Getty to supply motor fuel products bearing BP and Getty marks, to use BP and Getty trademarks, service marks and trade dress, and to license such use.

69.    The BP and Getty marks and trade dress have been extensively used, advertised, and are famous.  They are well-known in the petroleum industry and with the public generally as identifying the business, gas stations, petroleum, and petroleum products and services of BP and Getty.

15

70.    The BP and Getty marks and trade dress are inherently distinctive and have acquired secondary meaning in the minds of consumers.

71.    The goodwill connected with the use of, and symbolized by, the BP and Getty marks and trade dress benefits the business of, and is of great value to, BP and Getty, and to their licensee, NECG.

72.    Without the knowledge or consent of Plaintiffs, upon information and belief, the Operator Defendants have purchased unauthorized brands of gasoline which gasoline the operators substitute and pass off as BP and Getty gasoline.  The Operator Defendants apparently attempted to cover the BP and Getty logos at their stations at some point in time and to some extent, but the distinctive BP and Getty trade dress, and, in some cases, trademarks remain evident.  As a result, the motoring public is deceived and is likely to be confused into believing that the gasoline that the operators are selling is that which Plaintiffs are licensed to sell, or is sponsored or controlled by the Plaintiffs.  Such acts of the Operator Defendants will continue to cause actual confusion, mistake and/or deception as to the source of origin of the gasoline.

73.    The continued sale of unauthorized gasoline by the Operator Defendants will cause serious and irreparable damage to the reputation and goodwill of the Plaintiffs for which Plaintiffs are without an adequate remedy at law.

74.    The Plaintiffs have been damaged by the Operator Defendants' willful acts of infringement herein, the Operator Defendants have profited thereby, and unless the Operator Defendants' conduct as set forth above is preliminarily and permanently enjoined, Plaintiffs and their goodwill and reputation will suffer irreparable

injury of an insidious and continuing sort that cannot be adequately calculated and compensated in money damages.

75.     The Operator Defendants' conduct further constitutes willful trademark infringement involving a counterfeit mark, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), and Section 34(d) of the Lanham Act, 15 U.S.C. § 1116(d).

### THIRD CLAIM FOR RELIEF

### FALSE DESIGNATION OF ORIGIN, FALSE DESCRIPTION, AND FALSE REPRESENTATION

76.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 4 through 75 hereof as if fully set forth herein.

77.     The trademarks and trade dress of BP and Getty have become uniquely associated with, and hence identify, BP and Getty.  The non-BP or Getty gasoline sold from BP or Getty retail gasoline stations by the Operator Defendants is not gasoline being sold or controlled or sponsored by the Plaintiffs and constitutes a palming off and/or passing off of another's gasoline for that of the Plaintiffs by the Operator Defendants.  As a result, the Operator Defendants are liable for false designation of origin, false description, and false representation of the gasoline.

78.     Accordingly, all of the Operator Defendants' acts are a violation of 15 U.S.C. §1125(a).

### FOURTH CLAIM FOR RELIEF

### VIOLATION OF CUTPA

79.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 4 through 78 hereof as if fully set forth herein.

80.    The Operator Defendants' conversion of Getty and NECG's assets violate the provisions of the Connecticut Unfair Trade Practices Act, CONN. GEN. STAT. § 42-110a, *et seq.* ("CUTPA") because an act of conversion is a CUTPA violation. Moreover, the unauthorized suppliers currently supplying the Operator Defendants are competitors of NECG in the Connecticut market, and thus are engaging in unfair trade practices in the course of competition.

81.    Upon information and belief, the Operator Defendants have sold non-BP or non-Getty gasoline in such a manner as to deceive the motoring public as to its identity.  As a result, the Operator Defendants have violated CONN. GEN. STAT. § 53-370 (Fraudulent Sale of Liquid Fuels or Lubricating Oils).

82.    By reason of such violation and the other violations alleged herein, the Operator Defendants have engaged in unfair methods of competition and unfair or deceptive practices in the conduct of trade or commerce in violation of CONN. GEN. STAT. § 42-110b.

83.    Plaintiffs have suffered a substantial and ascertainable loss of money as a result of the use or employment of such acts.

## FIFTH CLAIM FOR RELIEF

### VIOLATION OF UNFAIR SALES PRACTICES ACT

84.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 4 through 83 hereof as if fully set forth herein.

85.    Defendants' actions constitute deceptive sales practices within the meaning of CONN. GEN. STAT. § 42-115e and Plaintiffs have been, or are likely to be, damaged thereby.  Upon information and belief, such acts were willfully engaged in by the Operator Defendants.

18

WHEREFORE, Plaintiffs respectfully demand judgment as follows:

1. For a permanent injunction restraining the Operator Defendants from purchasing, storing, selling, attempting to sell, offering for sale, distributing, marketing, or otherwise handling any petroleum or petroleum products distributed by any person or entities other than Plaintiffs or their designees;

2. Plaintiffs be awarded damages and the Operator Defendants' trademark and/or trade dress infringement profits after an accounting;

3. Plaintiffs be awarded judgment for three times such profits arising from the conduct complained of herein, pursuant to 15 U.S.C. § 1117(b) and 15 U.S.C. § 1116(d), or, alternatively, awarding Plaintiffs statutory damages of $1,000,000 per counterfeit mark per type of goods or services sold by the Operator Defendants, pursuant to 15 U.S.C. § 1117(c) and 15 U.S.C. § 1116(d);

4. Plaintiffs be awarded compensatory and punitive damages against each Operator Defendant;

5. Plaintiffs be awarded consequential damages;

6. The Operator Defendants be required to pay the Plaintiffs' reasonable attorney's fees;

7. An award of pre-judgment interest and post- judgment interest; and

8. Plaintiffs shall recover costs and shall have such other and further relief as the Court may deem just and proper.

PLAINTIFFS, GETTY PROPERTIES
CORP. and NECG HOLDINGS CORP.

By: _____*/s/ Charles T. Lee*_____
Charles T. Lee (CT00297)
Cort T. Malone (CT29018)
Rachel L. Ginsburg (CT28563)
ANDERSON KILL & OLICK, P.C.
1055 Washington Boulevard, Suite 510
Stamford, CT  06901
Telephone:  203-388-7950
Facsimile:  203-388-0750

*Attorneys for:* Getty Properties Corp.
NECG Holdings Corp

20

## **CERTIFICATION**

I, Cort T. Malone, Esq., hereby certify that on November 28, 2012, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF System, which will automatically send email notification of such filing to the following attorneys of record:

John J. Morgan, Esq.
Barr & Morgan
22 Fifth Street
Stamford, CT  06905

_____*/s/ Cort T. Malone*_____
Cort T. Malone

999550.1