UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GETTY PROPERTIES CORP. and NECG HOLDINGS CORP, <br><br> Plaintiffs, <br><br> vs. <br><br> RENALDI'S GETTY, LLC, HSTN LLC, et al. <br><br> Defendants. | Civil Action No. 3:12-CV-00865-AWT <br><br> THIRD AFFIDAVIT OF KEVIN SHEA[1] <br><br> November 28, 2012 |

STATE OF CONNECTICUT    )
                        ) SS:
COUNTY OF NEW LONDON    )

KEVIN SHEA, being duly sworn, deposes and says:

1.  I am the Executive Vice President of Getty Properties Corp. ("Getty"), one of the plaintiffs in the above-captioned action. I have worked in the petroleum marketing and real estate industry for over thirty years. I submit this "third" affidavit based on personal knowledge and a review of my files compiled in the ordinary course of my employment at Getty in support of Getty's motion for temporary restraining order and a preliminary injunction barring 27 operator defendants unlawfully occupying Getty service station properties located in Connecticut, and using Getty or NECG-owned underground storage tanks (the "Operator Defendants"), from purchasing, storing and selling gasoline from unauthorized suppliers not authorized by Getty or Plaintiff NECG Holdings Corp ("NECG").

2.  As discussed in my two prior affidavits in support of Plaintiff's previous request for injunctive relief (the "First Shea Aff." dated June 7, 2012 and filed

---

[1] Notarized version to be provided to the Court on November 30, 2012.

1

on June 11, 2012 along with Plaintiffs' moving papers, and the "Second Shea Aff." dated and filed on June 18, 2012 along with Plaintiffs' reply papers on its prior motion), Getty terminated Getty Petroleum Marketing Inc.'s ("GPMI") lease for nonpayment of rent, as permitted under the Consolidated, Amended and Restated Master Lease between Getty and GPMI (the "Master Lease").  Upon information and belief, GPMI also terminated Green Valley Oil, LLC's ("GVO") sublease for nonpayment of rent.

3. Section 16.3 (Tenant's Right to Sublet) of the Master Lease provides, in pertinent part:

> Notwithstanding anything to the contrary contained herein, all Subleases shall be subject and subordinate to the terms and conditions of the Restated Lease . . . and, unless Landlord elects otherwise, shall automatically terminate upon any termination of the Restated Lease.

4. Upon information and belief, on April 18, 2012, GVO terminated each of the Operator Defendants' sub-subleases with GVO that were subject to the terms of the overleases, including the Master Lease.  A true and correct copy of a sample of this letter (the "GVO Termination Letter") is attached hereto as Exhibit A.  The GVO Termination Letter notified the Operator Defendants that their Retail Gasoline Station Lease Agreements, Lease Supply Contracts, and other related agreements between the operators and GVO were terminated effective April 30, 2012.  The termination was mandated by the terms of both of the overleases, as well as the terms of the Operator Defendants' sub-subleases.

5. Specifically, the GVO Termination Letter states that GVO "is unable to secure continued possessory rights in and to the Station after April 30, 2012 and, after April 30, 2012, [GVO] will no longer have the right to grant possession of the

Station to you.  The termination of [GVO's] underlying lease are grounds for termination under your Franchise."

6. The GVO Termination Letter memorialized the direct termination of the Operator Defendants' sub-subleases by GVO and confirmed that GVO no longer maintained the right or authority to grant possession of the service stations to the operators.  Termination of the sub-subleases by GVO included termination of both the Operator Defendants' leases and their supply contracts.

7. On April 19, 2012, NECG entered into a Unitary Lease with Getty, which currently includes 21 Connecticut stations that are being illegally occupied by the Operator Defendants.  Getty also transferred ownership of the underground storage tanks, piping, and dispensers at these stations to NECG.  True and correct copies of the Bills of Sale evidencing this transaction are attached hereto as Exhibits B, the Bill of Sale from GVO to Getty subsidiary, AOC Transport, Co. ("AOC"), and Exhibit C, the Bill of Sale from AOC to NECG.  (The Operator Defendants attempted to block the transfer of the tanks from GVO to AOC via motion for a temporary restraining order, which was denied by this Court).  Getty has not yet sublet an additional six Connecticut stations that also are being illegally occupied by the Operator Defendants.

8. As discussed previously, Getty offered the former GVO tenants a way to remain in their stations after the GPMI bankruptcy by means of a license giving them adequate time to negotiate a longer term relationship with NECG.  Twelve operators initially entered into the license and are operating on a commission sale basis.  Several other operators have subsequently agreed to operate on that basis.  The

commissioned agent class of trade is one used at over three hundred properties in Getty's portfolio and at thousands of retail motor fuel sites throughout the country.

9. The Operator Defendants who did not agree to the license unlawfully sought gasoline supply from unauthorized suppliers. On or about May 17, 2012, Plaintiffs became aware that a company called Tuxis-Ohr Fuel, Inc. ("Tuxis") was making unauthorized deliveries to certain of the Operator Defendants. Ultimately, Plaintiffs sued Tuxis in this action seeking injunctive relief and damages.

10. On or about October 17, 2012, Tuxis settled with Plaintiffs and agreed to cease delivering gasoline to the Operator Defendants via a Stipulation of Settlement and Order of Dismissal with Tuxis, which was so ordered by this Court on October 18, 2012. In the Stipulation, Tuxis acknowledged that it had been supplying gasoline to the Operator Defendants' service stations since May 1, 2012 and provided Plaintiffs with records of its deliveries. Pursuant to the terms of the settlement, Tuxis ceased delivering gasoline to the Operator Defendants as of October 21, 2012.

11. The Stipulation further stated that once Tuxis ceased delivering to the listed service stations, "NECG will offer to supply the Stations on a delivered tank wagon basis consistent with the commercial terms of the Stations' most recent supply contract with Green Valley Oil, LLC, and will do so upon acceptance by the operators at such locations of such offer ...." Plaintiffs mailed temporary supply agreements to 26 of the 27 Operator Defendants in accordance with the Stipulation on or about October 20, 2012. A sample Supply Agreement is attached hereto as Exhibit D. (One operator, ALP, was not sent this supply arrangement as it previously had agreed to the NECG license offer, but then reneged on that offer). The temporary supply arrangement

specifically states: "This arrangement is temporary and shall be in effect during the pendency of the legal proceedings relating to this location, subject to any earlier termination based on the terms of the agreements between NECG and you."

12. To date, six station operators who previously had been purchasing gasoline from unauthorized suppliers have accepted the temporary NECG supply offer and, accordingly, are not included in the motion for injunctive relief filed concurrently herewith. Upon information and belief, the remaining Operator Defendants continue to purchase gasoline from unauthorized suppliers, store it, and re-sell it to the motoring public from Getty-owned pumps and storage tanks.

13. I am advised that unauthorized deliveries recently were observed at two of the Connecticut stations being unlawfully occupied by the Operator Defendants. Specifically, on or about November 16, 2012, an unauthorized delivery was observed at the location occupied by Pamby Motors, Inc., located at 36 Danbury Road, Ridgefield, Connecticut. On or about November 23, 2012, an unauthorized delivery was observed at the location occupied by Indtur, LLC, located at 531 North Main Street, Naugatuck, Connecticut.

14. I am further advised that at least one station – ALP Convenience, LLC – has been committing gasoline inventory fraud. Specifically, upon information and belief, the operator at the ALP location was simply duplicating an earlier week's gasoline inventory records rather than conducting the state-mandated weekly gasoline inventory update and recording. The Connecticut Department of Energy and Environmental Protection has been notified of this reporting violation.

_____
Kevin Shea

Sworn to before me this
28th day of November, 2012.


_____
Commissioner of the Superior Court